In re the MARRIAGE OF Sally Anne GRAY, Appellee,

and

M. Robert Gray, Appellant.

No. 89CA1774.

Colorado Court of Appeals, Div. V.

March 14, 1991.

Rehearing Denied April 11, 1991.

Certiorari Denied July 29, 1991.

Linda Wade Hurd, Denver, for appellee.

Jon Slaughter Pelegrin, Lakewood, for appellant.

Opinion by Judge PLANK.

M. Robert Gray, husband, appeals the order reducing maintenance payable to Sally Anne Gray, wife, from $1,400 per month to $900 per month rather than a lesser sum. We affirm.

Husband and wife were divorced in 1979 after an 18–year marriage. As pertinent here, wife received the family home and husband received his retirement account, an IRA, and a $20,000 note secured by the family home. Wife was afflicted with multiple sclerosis, and husband agreed to pay maintenance in the amount of $900 per month.

In June 1988, wife sought and received an increase in maintenance. At that time, husband had been terminated from his employment of 25 years, but was to receive $9,850 per month severance pay until September 1989. At the review hearing held in September 1989, husband requested that the court reduce maintenance to $200 per month. However, the parties stipulated that wife continued to need $1,600 per month to meet her reasonable needs.

The court found that husband had made diligent, but unsuccessful, efforts to obtain employment, including pursuing positions at a reduced salary and sending out numerous resumes. Husband's monthly gross income from a consulting business he was establishing while also seeking other employment was found to be exaggerated at approximately $500. The court found that husband had $30,000 equity in his home, savings and checking accounts totaling $1,250, an IRA of $11,000, a profit-sharing plan of $45,000 which could be drawn from in six months, and a pension which would yield a minimum of $3,000 per month at age 54, in four years. The court noted that husband's lifestyle had not changed, despite his termination. The monthly ex-

penses for himself and his current wife, as reflected in husband's financial affidavit exceeded $7,000, including payments on a $225,000 home. The court also observed that, subsequent to the termination, husband had purchased a 1989 automobile and paid for it in full by borrowing from his parents.

The trial court concluded that there had been a drastic change in the husband's circumstances. It also determined that wife's circumstances had deteriorated since December 1988. While the court noted that wife had $37,000 in savings from the sale of the former family home, it found that such savings should remain in reserve since wife's needs were great and compelling. Specifically, the court found that wife was confined to an electric wheelchair, which was in need of repair. It also found that wife's place of residence in public housing fell below the standard that she had become accustomed to during the marriage.

The court was concerned both that its order not impoverish husband nor force wife to drain her savings. In light of the change in husband's financial status, it therefore ordered that maintenance be reduced to $900 per month, as that was the original amount agreed to by the parties. It set another review for one month later and required husband to report his employment on a monthly basis.

Husband contends that the court erred as a matter of law in implicitly finding that he had the ability to meet his own needs and also those of wife. He also maintains that the court erred in admitting, considering, and relying on evidence of the value of his current and future assets. He argues that by doing so, the court reopened the parties' property division without the existence of conditions justifying a reopening. We conclude that the trial court did not reopen the property division.

■ Absent extraordinary circumstances, a trial court may not order the use of property awarded to one party in a dissolution proceeding in order to pay maintenance awarded to the other party. *See Mackey v. Hall,* 694 P.2d 1275 (Colo.1985).

However, in setting the amount of maintenance, the court must take into consideration all relevant factors, including the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. Section 14–10–114(2)(f), C.R.S. (1987 Repl.Vol. 6B). In determining that spouse's ability to pay, the court may consider the future earning potential of the spouse. *In re Marriage of Anderson,* 37 Colo.App. 55, 541 P.2d 1274 (1975).

■ Here, while husband was out of work despite his good faith efforts to obtain other employment, he nevertheless retained a significant earning capacity. The continued standard of living during the year that husband received severance pay is indicative of his own expectation that he would continue to enjoy that same level, despite his termination. The court considered all of the husband's assets, those acquired in the property division and those subsequently acquired, in determining his total resources available to meet the maintenance obligation. The court did not abuse its discretion in considering these matters. Nor does the determination that husband has the ability to pay $900 per month maintenance constitute an abuse of discretion.

Inasmuch as husband is not currently receiving any funds from his retirement plan, we need not reach at this time the broader issue whether the income from his retirement account may be considered as an additional resource to pay maintenance.

Order affirmed.

HUME and NEY, JJ., concur.