**D.A. NICHOLS, Appellee,**

v.

**R.F. NICHOLS, Appellant.**

**No. 83249.**

▇▇▇▇▇▇

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 7, 1995.

▇▇▇▇▇▇

Jennifer E. Irish, Oklahoma City, for appellee.

Charles O. Schem, Oklahoma City, for appellant.

## *MEMORANDUM OPINION*

BOUDREAU, Judge.

R.F. Nichols (Husband) appeals the entry of a Qualified Domestic Relations Order directing a monthly disbursement of $1,000 to his ex-wife D.A. Nichols (Wife) from his I.B.M. Retirement Plan until the amount of the judgment for alimony arrearage is paid. The issue on appeal is whether Husband's retirement benefits, structured under the auspices of the "Employee Retirement Income Security Act," 29 U.S.C. §§ 1001 through 1461 (ERISA), are exempt from involuntary assignment. We hold that they are not and affirm the trial court.

Husband and Wife were divorced in 1987. Wife was awarded a support alimony judgment in the amount of $43,200 to be paid in monthly installments of $1,200. Husband complied with the monthly payment schedule for six months and then discontinued making the payments. In 1992, Wife secured an alimony arrearage judgment against Husband in the amount of $36,000. Since its entry, Husband has paid no sums of money toward the arrearage judgment.

Husband is a participant in the IBM Retirement Plan (Plan), which was structured under the auspices of ERISA. He currently receives distributions of $2,549.65 per month from the Plan. In May of 1993, Wife filed a motion for a Qualified Domestic Relations Order. The motion requested the payment of the support alimony arrearage judgment directly to Wife from the Plan.

The trial court initially entered a Qualified Domestic Relations Order directing payment to Wife from the Plan, which was subsequently vacated as the result of a notice deficiency. In January of 1994, after a hearing, the court again entered a Qualified Domestic Relations Order directing a monthly disbursement to Wife of fifty-five percent of Husband's monthly net distribution. The court then instructed counsel for both parties to prepare an order reflecting his ruling. However, the Plan administrator rejected the order prepared by counsel because it failed to show a sum certain total amount to be paid to Wife and because it failed to specify a fixed monthly amount of payment. Upon being advised that the proposed order lacked the specificity required by ERISA, the parties agreed to both a judgment amount and a fixed monthly payment. On February 11, 1994, the parties filed a Qualified Domestic Relations Order directing a monthly disbursement to Wife from the Plan of $1,000 until the amount of $46,400 is paid. It is from this Order that Husband appeals.

■ The facts of this case are not in dispute. The question presented is a legal one. Contested issues of law are reviewable in all actions, suits, and proceedings by a de novo standard. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Review of law is called "de novo," which means no deference, not necessarily a full rehearing or new factfinding. *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ Husband contends that his retirement benefits are exempt from involuntary assignment such as execution or garnishment. As the source of his shelter, he points to 31 O.S.1991 § 1A(20), which specifically exempts interests in retirement plans from attachment, execution or other species of forced sale for the payment of debts. We reject his argument. We hold that the Oklahoma statute bearing on the exemption of retirement plans from involuntary assignment is preempted by ERISA, the federal statute which governs such plans.

Section 1144 of ERISA provides for preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. Husband's IBM Retirement Plan is an "employee benefit pension plan" as defined by section 1002(2)(A) of ERISA. Accordingly, 31 O.S. § 1A(20), which specifically exempts interests in retirement plans from attachment, execution or other species of forced sale for the payment of debts, is preempted under ERISA's section 1144. To the extent that there are limitations on the assignment or alienation of Plan benefits, they must be found within the provisions of ERISA itself and not within the Oklahoma statute.

ERISA contains a provision that addresses the issue of assignability, either voluntarily or involuntarily. 29 U.S.C. § 1056(d)(1). The provision states that each pension plan shall provide that "benefits provided under the plan *may not* be assigned or alienated." (Emphasis added). However, section 1056(d)(3)(A) creates an exception to the anti-assignability clause of section 1056(d)(1) and the preemptive force of section 1144 for a "qualified domestic relations order" from a state court. The exception provides that the anti-assignability clause "shall not apply if the order is determined to be a qualified domestic relations order." The same exception also requires that each pension plan covered by ERISA "shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." This exception was created by a 1984 amendment because Congress felt it was necessary to guarantee that

the Nation's private retirement-income system provided fair treatment for women. *See* S.Rep. No. 575, 98th Cong., 2d Sess. 1 (1994), *reprinted in* 1984 U.S.C.A.A.N. 2547; H.R.Rep. No. 655, 98th Cong., 2d Sess., pt. 1 (1984).

█ The 1984 amendment to ERISA goes beyond insuring that the anti-assignability provision cannot be used to block the enforcement of qualified domestic relations orders relating to property division at the time of divorce. It also provides the same protection for qualified domestic relations orders providing for child support and alimony payments by ERISA plan participants. *See* 29 U.S.C. § 1056(d)(3). Section 1056(d)(3)(B)(ii) provides as follows:

> (ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
>
> (I) *relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant,* and
>
> (II) is made pursuant to a State domestic relations law (including a community property law). (Emphasis added).

█ In the underlying case, the state court judgment against Husband was one that related to a provision requiring alimony payments to a former spouse. Accordingly, it was a "domestic relations order" that could be qualified by a state court under section 1056(d)(3)(B)(i). When properly qualified, the court could then assign to Wife the right to receive a portion of the benefits payable with respect to the Husband as a participant under the Plan. The trial court followed the proper procedure in this case and we find no error with the entry of the Qualified Domestic Relations Order.

Finally, we reject Husband's argument that this procedure amounted to an impermissible attempt to re-open a final property adjudication in a divorce action.

AFFIRMED.

TAYLOR, P.J., and REIF, J., concur.