In re the MARRIAGE OF Mary
M. LeBLANC, Appellee,

and

Richard J. LeBLANC, Appellant.

No. 96CA0881.

Colorado Court of Appeals,
Div. III.

Sept. 4, 1997.

Litvak Litvak Mehrtens and Epstein, P.C.,
Ronald D. Litvak, David W. Foster, Denver,
for Appellee.

Thomas P. Malone & Associates, P.C.,
Thomas P. Malone, Denver, for Appellant.

Opinion by Judge CASEBOLT.

In this post-dissolution proceeding, Richard John LeBlanc (husband) appeals the trial court's entry of a qualified domestic relations order (QDRO) directing the payment of maintenance arrearages owed to Mary McCarthy LeBlanc (wife) from certain of his retirement benefits. Husband also appeals the trial court's award of attorney fees. We affirm.

The parties' nineteen-year marriage was dissolved by decree in 1984. The proceedings in this matter have been protracted and have resulted in numerous appeals. *See In re Marriage of LeBlanc,* 800 P.2d 1384 (Colo. App.1990).

I.

In this, the parties' fifth appeal, the main issue presented is whether the trial court erred by issuing a QDRO directing payment from husband's pension funds toward elimination of approximately $123,000 in maintenance arrearages. We conclude that the issuance of the QDRO was proper.

A.

Husband, a retired commercial airline pilot, maintains that his retirement benefits are protected under the exemption set forth in § 13–54–102(1)(s), C.R.S. (1996 Cum.Supp.). He also claims that his retirement funds are not "earnings" and are thus exempt under § 13–54–104, C.R.S. (1996 Cum.Supp.). We disagree.

■ Ordinarily, a judgment for arrearages of maintenance is collectible like any other judgment. *See In re Marriage of Gilmore,* 672 P.2d 228 (Colo.App.1983). However, pursuant to § 13–54–102(1)(s), C.R.S. (1996 Cum.Supp.), an exemption from levy and sale under writ of attachment or writ of execution exists for:

Property, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, including those in which the debtor has received · benefits or payments, has the present right to receive ·benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974" as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time. . . .

The retirement benefit exemption, as well as the numerous other exemptions set forth in § 13–54–102, C.R.S. (1987 Repl.Vol. 6A), extends to all writs of execution including writs of garnishment and attachment, except for those writs resulting from a judgment for child support arrearages. Section 13–54–106, C.R.S. (1987 Repl.Vol. 6A).

■ In *In re Marriage of Plank,* 881 P.2d 486 (Colo.App.1994), a division of this court determined that the exemption provided under § 13–54–102(1)(s) does not apply in any action for dissolution of marriage in which the petition was filed before May 1, 1991, the effective date of that subsection. Husband's contention to the contrary notwithstanding, we agree with the rationale and conclusion in *Plank* and, therefore, reject his assertion that the holding therein must be reexamined because it contravenes the public policy favoring the protection and sanctity of pension and retirement benefits.

We also reject husband's claim that § 13–54–104(1)(b), C.R.S. (1996 Cum.Supp.) provides a separate exemption for his retirement benefits. That statute concerns the garnishment, attachment, or levy upon a *person's* "earnings," § 13–54–104, C.R.S. (1987 Repl. Vol. 6A), and limits the percentage of earnings that may be seized.

Even if we assume, without deciding, that the statute sets forth a separate exemption for retirement benefits by virtue of its definition of "earnings," the language relied upon by husband was not added until May 1, 1991. *See* Colo. Sess. Laws 1991, ch. 65, § 13–54–104 at 384. Hence, applying an analysis of § 13–54–104 similar to that set forth in *In re Marriage of Plank, supra,* we conclude that any garnishment exemption arguably implicit in the language of § 13–54–104 has no application to this dissolution action commenced

by petition before May 1, 1991. Both the subsection at issue in *Plank* and that here were added by the same Act, and the effective date language applies equally to both.

And, we further note that the version of the statute in effect when the parties' petition for dissolution was filed expressly included as earnings the "avails of any pension or retirement benefits." Section 13–54–104(1)(b), C.R.S. (1987 Repl.Vol. 6A).

We thus do not address wife's contention that these statutes have no application because a QDRO does not constitute a writ of attachment, execution, or garnishment.

### B.

Husband also argues that the use of a QDRO as a method of collecting a maintenance arrearage is improper. We disagree.

A QDRO is defined in 26 U.S.C. § 401(a)(13)(B) (1994), 26 U.S.C. § 414(p) (1994), and 29 U.S.C. § 1056(d)(3)(B) (1994) as a judgment, decree, or order made pursuant to state domestic relations law that meets certain informational requirements and that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable to a participant under a pension plan. The issuance of a QDRO permits, under limited circumstances, circumvention of the non-alienation provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. (1994). *See also* 26 U.S.C. § 401, et seq. (1994).

■ The provisions creating a QDRO evince the overall congressional purpose to protect persons and their dependents from the claims of creditors while, at the same time, preventing interference with the state's power to enforce family support obligations. *See Ball v. Revised Retirement Plan for Salaried Employees of Johns–Manville Corp.*, 522 F.Supp. 718 (D.Colo.1981) (addressing effectiveness of domestic relations decrees as an implicit exemption from ERISA's spendthrift clauses prior to the enactment of the provisions creating QDROs); *Baird v. Baird*, 843 S.W.2d 388 (Mo.App. 1992).

■ Pursuant to this purpose, a majority of courts addressing the issue have recognized the effectiveness of a QDRO to enforce an earlier support judgment and allow collection of delinquent maintenance from a pension plan. *Baird v. Baird, supra; see also Operating Engineers' Local # 428 Pension Trust Fund v. Zamborsky*, 650 F.2d 196 (9th Cir.1981); *Stinner v. Stinner*, 520 Pa. 374, 554 A.2d 45 (1989). *But see Biles v. Biles*, 163 N.J.Super. 49, 394 A.2d 153 (1978) (permitting the use of a QDRO only to garnish periodic pension payments for accruing maintenance payments, but not to execute on a money judgment for support arrearages).

Honoring the enforcement of support orders is the policy that underlies the creation of the QDRO as an exception to the anti-alienation provisions of ERISA. For that reason, we agree with the majority of courts addressing this issue and conclude that a QDRO may be used to enforce an earlier support judgment and collect delinquent maintenance from the obligor's pension plan.

Therefore, we perceive no error in the issuance of the QDRO here.

### II.

Husband argues that the trial court's entry of the QDRO results in an improper taking of the only assets that were awarded to him as his sole and separate property in the dissolution. Again, we disagree.

Husband relies upon *In re Marriage of Gray*, 813 P.2d 819, 820 (Colo.App.1991), which, in affirming the reduction of a maintenance obligation, states that: "[A]bsent extraordinary circumstances, a trial court may not order the use of property awarded to one party in a dissolution proceeding in order to pay maintenance awarded to the other party." Husband additionally claims that wife has conceded that the retirement benefits are his only asset.

First, the record here reveals no concession by wife that the retirement funds are husband's only asset. Rather, wife simply states in her motion requesting the QDRO that husband has no "other known assets"

from which she can collect the maintenance arrearages.

Second, the value of husband's pension plans has been increased substantially by contributions from the time of the decree until the time of his retirement. This increase would be considered an asset separate from the property assigned to husband in the property division and, aside from the issues concerning that property's exempt status, would be an available source for the satisfaction of maintenance. *See In re Marriage of Folwell,* 910 P.2d 91 (Colo.App.1995).

Consequently, we are unconvinced by husband's assertions that the use of a QDRO to require payment from his pension funds will, in this instance, result in a wrongful taking of his property. We likewise reject husband's claim of a constitutional violation of his property rights.

### III.

Husband's last contention is that the trial court's order awarding wife attorney fees was erroneous. We disagree.

■ The purpose of an award of attorney fees in actions for dissolution of marriage is to apportion the costs of the dissolution equitably based on the resources of the parties. *In re Marriage of Renier,* 854 P.2d 1382 (Colo.App.1993).

■ An award of attorney fees pursuant to § 14–10–119, C.R.S. (1987 Repl.Vol. 6A) is discretionary with the trial court, and its ruling thereon will not be disturbed on review if supported by the evidence. *In re Marriage of Hahn,* 628 P.2d 175 (Colo.App. 1981).

■ Here, wife presented expert testimony regarding the reasonableness of the fees assessed. While husband contends that he was not permitted an opportunity to present contradictory evidence, the record contains no request for a full hearing on the matter and counsel for husband indicated to the court that he might not pursue such a proceeding. In addition to the expert evidence, counsel for wife submitted an affidavit listing the hours worked and the charge per hour.

It also appears from the trial court's order that billing statements were submitted and reviewed. Because those statements are not contained in the record on appeal, we must assume that they adequately detailed the activities of wife's counsel. *See Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994) (reviewing court must presume trial court's findings and conclusions are supported by evidence when appellant has failed to provide a complete record).

Finally, the record is devoid of any indication that husband contested the reasonableness of the fees in the trial court. His only contention there was that the award constituted a taking of the only assets awarded to him in the decree.

In light of these circumstances, we further reject husband's contention that the trial court's order does not contain sufficient findings of fact for our review. Thus, we conclude that the trial court's order awarding fees to wife did not constitute an abuse of discretion. *See In re Marriage of Nixon,* 785 P.2d 151 (Colo.App.1989).

The order is affirmed.

NEY and DAVIDSON, JJ. concur.