In the Matter of the ESTATE OF Richard B. MacANALLY, Deceased.

The Estate of Richard B. MacAnally, Appellant,

v.

Imogene V. Levin, Objector–Appellee.

No. 99CA0120.

Colorado Court of Appeals, Div. V.

March 30, 2000.

Rehearing Denied June 1, 2001.

Certiorari Denied April 16, 2001.

Hutchinson Black and Cook, L.L.C., James England, Rachel Maizes, Boulder, Colorado, for Appellant.

Holme Roberts & Owen, LLP, John R. Webb, Renee W. O'Rourke, Stephanie M. Tuthill, Denver, Colorado, for Objector–Appellee.

Opinion by Judge TAUBMAN.

In this action for payment of benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* (1994), appellant, the Estate of Richard B. MacAnally (Estate), appeals the trial court's award of benefits in favor of appellee, Imogene V. Levin. We affirm.

MacAnally and Levin were married in 1967. In 1972, MacAnally became a member of the faculty at the California Institute of Technology (Cal Tech). At that time, MacAnally executed two annuity contracts issued by Teacher's Insurance and Annuity Association and College Retirement Equities Fund (TIAA–CREF). MacAnally named Levin as beneficiary of those annuity contracts. Cal Tech made contributions to the annuity contracts until 1974 when MacAnally terminated his employment with Cal Tech. In 1974, Levin and MacAnally also divorced, and as part of the property settlement, MacAnally received the annuity contracts as his sole and separate property.

In 1987, MacAnally remarried. He died in July 1997, still married to his second wife. However, at the time of MacAnally's death, Levin remained as the beneficiary designated on MacAnally's TIAA–CREF annuity contracts.

After MacAnally's death, the TIAA–CREF administrator filed a petition requesting that MacAnally's TIAA–CREF annuity plan benefits be deposited into the registry of the district court pending the court's determination of the proper distribution of funds. Levin filed an objection, asserting that the annuity plan was subject to ERISA, and that as the named beneficiary she was entitled to death benefits pursuant to the plan provisions. The Estate sought plan benefits under § 15–11–804, C.R.S.1999, which by operation of law revokes any bene-

ficiary designation of a spouse from whom a decedent was divorced at the time of death. Agreeing with Levin, the trial court ordered that the proceeds from MacAnally's TIAA–CREF annuity be paid to her as the sole designated beneficiary of the contracts. This appeal followed.

### I. ERISA Applicability

■ The Estate contends the trial court erred in determining that ERISA applies to MacAnally's annuity contracts. It argues that ERISA does not apply when the benefits at issue were entirely funded and the significant events affecting distribution decisions occurred before ERISA became effective in 1975. We are not persuaded.

■ The trial court's determination regarding ERISA applicability raises a question of law and is therefore subject to *de novo* review. *Lakeview Associates, Ltd. v. Maes,* 907 P.2d 580 (Colo.1995).

ERISA is a comprehensive statute regulating employee pension and welfare plans. "ERISA imposes participation, funding, and vesting requirements on pension plans and sets various uniform standards including rules concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans." *Celebrity Custom Builders v. Industrial Claim Appeals Office,* 916 P.2d 539, 542 (Colo.App.1995).

In 29 U.S.C. § 1144(b)(1)(1994), Congress expressly defined the plans to which ERISA applies. This section provides that "[ERISA] shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." This section is relevant to our analysis here because some of the acts or omissions relating to MacAnally's TIAA–CREF benefits occurred prior to January 1, 1975, while other acts giving rise to Levin's cause of action occurred after the effective date.

■ We are not aware of a Colorado case interpreting 29 U.S.C. § 1144(b)(1). However, courts of other jurisdictions have considered when substantial acts relating to benefits entitlement occurred—both before and after the ERISA effective date. These cases

articulate a two-pronged test for determining whether ERISA applies. First, a court must look at when the cause of action accrued. Second, the court must determine when the conduct that formed the basis for the claim occurred. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984). When the "substantial acts contributing to a cause of action occur after the [effective] date, ERISA is applicable to the cause of action." *Lafferty v. Solar Turbines International*, 666 F.2d 408, 410 (9th Cir.1982).

It is undisputed that the annuity contracts are "employee pension benefit plans," as defined by ERISA, and are subject to the provisions of ERISA, unless they are excluded pursuant to 29 U.S.C. § 1144 (1994). Although the trial court defined the contracts as "welfare benefit plans," the contracts were actually "pension benefit plans" because they were retirement annuity contracts. They were not established "for the purpose of providing for ... participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002 (1994).

In support of its argument, the Estate relies on cases holding that, although a cause of action for determining a plan participant's benefits may have arisen after ERISA's effective date, ERISA will not apply when all the significant or substantial acts or omissions occurred before ERISA's effective date. *See Jameson v. Bethlehem Steel Corp. Pension Plan*, 765 F.2d 49 (3d Cir.1985) (ERISA does not apply where significant acts or omissions occurred prior to the effective date, despite the fact that the cause of action arose after the effective date); *Menhorn v. Firestone Tire & Rubber Co., supra* (denial of plan benefits after ERISA effective date was insufficient basis for ERISA application because determination of benefits entitlement was based on events which occurred before the effective date); *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir.1977) (ERISA inapplicable where employment relationship terminated and employee requested benefits prior to ERISA's effective date); *Grich v. Wood & Hyde Leather Co.*, 74 A.D.2d 183, 427 N.Y.S.2d 96 (1980) (ERISA inapplicable to claim for pension benefits where significant acts giving rise to claim occurred prior to ERISA effective date).

We conclude these cases are distinguishable because the relevant acts or omissions here consisted of the contributions to the annuity contracts, MacAnally's termination from employment at Cal Tech, and the divorce between MacAnally and Levin. It is undisputed that all these acts occurred before ERISA became effective January 1, 1975. We further conclude that the death of MacAnally was not a substantial "act or omission," but rather was the "conduct" that gave rise to Levin's cause of action. *See Menhorn v. Firestone Tire & Rubber, Co., supra; Lafferty v. Solar Turbines International, supra.*

Pursuant to the TIAA–CREF plan, Levin was entitled to a death benefit in the event MacAnally died before retirement without changing the beneficiary. The death benefit is distinguished from MacAnally's retirement benefits in that the death benefit was only payable if MacAnally died before he retired, whereas the retirement benefits were payable to MacAnally if he survived until his retirement. MacAnally could have changed the beneficiary of his TIAA–CREF benefits at any time between the 1974 divorce and his death in 1997, but chose not to do so during those 23 years. Therefore, if MacAnally had changed the beneficiary or survived until retirement, Levin would not have been entitled to the death benefits because MacAnally would have begun collecting the payments. Levin had a cause of action to collect the death benefits only if MacAnally died before retirement without changing the beneficiary.

Here, the trial court determined that the relevant "act or omission" was either the 1990 enactment of the divorce revocation statute, § 15–11–804(7)(c) C.R.S., 1999, or MacAnally's death in 1997. Based on this determination, the trial court held that the significant acts or omissions occurred after ERISA's effective date, and therefore, that ERISA applies.

However, we conclude that although the relevant acts or omissions occurred prior to January 1, 1975, these acts were not signifi-

cant as contemplated in the cases discussed above. *See Lafferty v. Solar Turbines International, supra* (where substantial acts contributing to cause of action occur after ERISA effective date, ERISA applies, despite the fact that acts affecting a plan also occurred before ERISA effective date); *see also Grich v. Wood & Hyde Leather Co., supra* (recognizing that if acts prior to ERISA effective date were minor and other acts giving rise to cause of action occurred after ERISA effective date, ERISA could apply). Rather, MacAnally's death in 1997, his failure to change the beneficiary, and the enactment of the divorce revocation statute were acts which constituted significant conduct giving rise to Levin's cause of action.

Because MacAnally's death occurred well after the ERISA effective date, we conclude ERISA applies in determining the party entitled to payment of MacAnally's TIAA–CREF benefits – Levin or the Estate.

## II. ERISA Preemption

■ The Estate next contends the trial court erred in determining that ERISA preempted the application of the Colorado divorce revocation statute. We disagree.

■ The purpose of ERISA is "to protect the interests of employees and their beneficiaries in employee benefit plans and to ensure that plans and plan sponsors are subject to a uniform body of benefit law by minimizing the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Barrett v. Hay,* 893 P.2d 1372, 1380 (Colo.App.1995).

A beneficiary may bring a cause of action "to recover benefits due to him under the terms of [the] plan" pursuant to 29 U.S.C. § 1132 (1994). ERISA imposes a fiduciary duty upon a plan administrator to pay plan benefits to the entitled employee or designated beneficiary in accordance with the terms of the plan. 29 U.S.C. § 1104 (1994).

Since the enactment of ERISA, numerous courts have addressed the issue of ERISA preemption of state law, and at least 16 such cases have been decided by the United States Supreme Court. They have considered three distinct preemption principles—direct, statutory, and field preemption.

■ Under direct preemption, a federal law preempts a state law where the state law directly conflicts with the federal law. *See Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

■ Statutory preemption occurs when a statute expressly states that it preempts other law. In the ERISA context, ERISA preempts a state law pursuant to statutory preemption where a state law relates to any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a)(1994); *Barrett v. Hay, supra,* 893 P.2d at 1376 ("A law relates to an employee benefit plan ... if it has a connection with or reference to such plan.")

■ Field preemption occurs where a federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it." *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1147 (Colo.1997).

Despite the many cases analyzing the preemptive effect of ERISA on state law, courts have not reached a definitive conclusion. *Compare California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (pursuant to ERISA statutory preemption and principles of field preemption, "California's prevailing wage law neither makes 'reference to' nor has 'connection with' ERISA plans and, thus, does not 'relate to' ERISA plans and is not preempted by ERISA"); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (based on statutory and field preemption, New York statute not preempted because it did not "relate to" employee benefit plans pursuant to ERISA), *with Boggs v. Boggs, supra* (Louisiana community property law preempted because it directly conflicts with express ERISA anti-alienation provisions); *Houdek v. Mobil Oil Corp.,* 879 P.2d 417, 420 (Colo.App.1994) ("state law tort claims which conflict directly with viable ERISA cause of action are preempted by ERISA").

The Estate correctly points out that in *Dillingham* and *Travelers* the Supreme Court cut back significantly on its prior expansive interpretation of statutory preemption under ERISA. However, those cases only addressed ERISA statutory and field preemption.

In a more recent case, *Boggs v. Boggs, supra,* the Supreme Court addressed direct preemption by ERISA. Relying on conventional conflict preemption principles, the *Boggs* Court held that: "[i]n the face of [a] direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57. The Court further stated, "[c]onventional conflict preemption principles require preemption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57. Therefore, as the *Boggs* Court held, if a direct conflict exists, a court need only address direct preemption and does not need to evaluate whether a state law is preempted based on statutory or field preemption.

The Estate further argues that, notwithstanding *Boggs,* two recent cases have applied the Supreme Court's ERISA statutory preemption cases in circumstances similar to those presented here and have held that state law is not preempted. *See Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir. 1998) (based on ERISA statutory and field preemption, ERISA did not preempt California community property law because the law did not alter plan administration or affect relationships between ERISA entities); *In re Estate of Egelhoff,* 139 Wash.2d 557, 989 P.2d 80 (1999) (pursuant to statutory and field preemption, ERISA did not preempt Washington state law under which spouses named as beneficiaries of ERISA plans automatically lose such designation upon dissolution of marriage).

In our view, both cases are distinguishable. *Emard* did not address direct preemption, and we disagree with the *Egelhoff* court's analysis of the scope of direct conflict preemption as articulated in *Boggs v. Boggs, supra.*

In *Egelhoff,* the court defined direct preemption as applying where "[the state law] has a sufficient 'connection with' an ERISA plan to compel preemption." However, the *Egelhoff* court further stated, "[A direct preemption analysis is required when] a state law ... directly or indirectly invades the core functions of ERISA regulation...." *In re Estate of Egelhoff, supra,* 989 P.2d at 89. Thus, the *Egelhoff* court's definition of *"direct preemption"* combined the principles of direct and statutory preemption. In our view, however, the analysis of whether a state law has a "connection with" an ERISA plan arises when a court must evaluate whether a state law "relates to" an ERISA plan. *See* 29 U.S.C. § 1144(a)(1994). According to case law, a state law "relates to" an ERISA plan if it "refers to" or has a "connection with" such plan. *Barrett v. Hay, supra.* Therefore, we conclude that the "connection with" analysis only applies to statutory preemption.

According to *Boggs,* direct preemption occurs where "compliance with both federal and state regulations is a physical impossibility, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs, supra,* 520 U.S. at 844, 117 S.Ct. at 1762, 138 L.Ed.2d at 57.

Thus, while the *Egelhoff* court recognized the second part of the *Boggs* definition of direct conflict preemption, it combined that with a factor related to statutory preemption analysis which is contrary to our reading of *Boggs.* *Boggs* states that where "there is a conflict ... [courts] need not inquire whether the statutory phrase 'relate to' provides further and additional support for the preemption claim." *Boggs v. Boggs, supra,* 520 U.S. at 841, 117 S.Ct. at 1761, 138 L.Ed.2d at 55. In addition, the *Egelhoff* court confined the *Boggs* holding to cases involving conflicts with the ERISA anti-alienation provision. Here, however, we apply *Boggs* to 29 U.S.C. § 1104, which expressly directs plan administrators to pay plan benefits to designated plan beneficiaries.

For these reasons we do not adopt the reasoning of *Egelhoff,* but instead follow the Eighth Circuit which applied the direct preemption analysis articulated in *Boggs.* See *Painter v. Golden Rule Insurance Co.,* 121 F.3d 436, 439 (8th Cir.1997) ("If there is a conflict between ERISA and state law, state law is preempted, whether or not the statutory phrase 'relate to' of ERISA's express preemption provision offers further and additional support for preemption claim."). *Cf. Prudential Insurance Co. v. National Park Medical Center, Inc.,* 154 F.3d 812 (8th Cir. 1998) (state law preempted based on statutory and field preemption; court did not consider direct preemption because the parties did not raise it).

In summary, we conclude that the Colorado divorce revocation statute, § 15–11–804(7)(c), directly conflicts with ERISA in the circumstances presented here. Pursuant to ERISA and MacAnally's TIAA–CREF contract, the plan administrator must pay a death benefit to the beneficiary named in the plan if the plan participant dies before retirement. See 29 U.S.C. § 1104 (1994). In direct contrast, the divorce revocation statute changes the beneficiary to whom benefits are paid from the beneficiary designated in the plan—Levin, to an unnamed beneficiary—the Estate. This constitutes a direct conflict, and thus based on principles of direct preemption, ERISA preempts the divorce revocation statute.

### III. Federal Common Law

The Estate also asserts that even if ERISA preempts the Colorado divorce revocation statute, that statute should be applied as federal common law to dictate the distribution of MacAnally's TIAA–CREF benefits to the Estate. We are not persuaded.

When it enacted ERISA, Congress provided that the states should develop a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80, 92 (1989). The federal common law is created by reference to state law. However, with regard to ERISA-governed plans, it is not appropriate to apply federal common law where the state law conflicts with ERISA. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.1995).

Because the Colorado statute directly conflicts with the express provisions of ERISA, we conclude this is not an appropriate circumstance for the application of federal common law.

Accordingly, we affirm the trial court's award of the TIAA–CREF benefits to Levin.

Judgment affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.