2013 COA 43

**IN RE the MARRIAGE OF Regina T. DREXLER, Appellee,**

and

**Charles B. BRUCE, Jr., Appellant.**

**Court of Appeals Nos. 11CA2202 & 12CA0192**

Colorado Court of Appeals, Div. I.

Announced March 28, 2013

City and County of Denver District Court No. 09DR2227, Honorable Herbert L. Stern, III, Judge

McClain Drexler Matthews, LLC, Michael P. Matthews, Denver, Colorado, for Appellee

Charles B. Bruce, Jr., Pro Se

Opinion by JUDGE TAUBMAN

¶ 1 This appeal is one of several brought by Charles B. Bruce, Jr. (husband) arising out of the dissolution of his marriage to Regina T. Drexler (wife). The present dispute raises the issue whether an obligor spouse's retirement funds in a plan subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (2010), are exempt from assignment under a qualified domestic relations order (QDRO) to satisfy domestic support arrearages. Husband argues that his retirement funds are exempt under both Colorado and federal law. We hold that the funds are not exempt, and we affirm the trial court's orders for a QDRO assigning the funds to wife, and sanctioning husband for noncompliance with the transfer.

## I. Background

¶ 2 The parties' marriage ended in 2010 and husband was ordered to pay wife $5000 per month in child support and maintenance of $12,000 per month for four years, followed by $8000 per month for two years. Thereafter, husband, who was a tax attorney and partner at a large law firm, did not comply with his obligations, resulting in the accumu-

lation of $101,486 in support arrearages and the suspension of his law license. Wife then moved for a QDRO to collect the arrearages from the funds held in husband's ERISA retirement plan at the law firm.

¶ 3 Husband objected, contending that Colorado and federal law prohibited assigning his retirement funds to wife to pay the arrearages. The trial court disagreed and ordered him to transfer the funds to wife using a QDRO. After husband did not comply, the court ordered that the QDRO transfer be completed without his signature, that he reimburse wife for her attorney fees incurred because of his noncompliance, and that the suspension of his previous contempt sentence for violating other court orders be lifted. This appeal followed.

## II. Use of the QDRO to Satisfy Wife's Arrearages

### A. Standard of Review

¶ 4 We review de novo the legal issue whether Colorado and federal statutes prohibit assignment of husband's retirement funds to pay wife's arrearages. *SeeWolf Ranch, LLC v. City of Colorado Springs,* 220 P.3d 559, 563 (Colo.2009) (statutory interpretation is a question of law subject to de novo review).

### B. Federal Law

¶ 5 ERISA was enacted to protect private retirement plan participants and their beneficiaries. *See* 29 U.S.C. § 1001b(b) (2006); *Boggs v. Boggs,* 520 U.S. 833, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). To this end, the act generally prohibits assignment or alienation of retirement plan funds. 29 U.S.C. § 1056(d)(1) (2006); *see People v. Stephenson,* 12 P.3d 266, 268 (Colo.App.1999) (ERISA anti-alienation clause prohibits assignments of retirement benefits, even when done pursuant to court order); *see also* 26 U.S.C. § 401(a)(13)(A) (2006) (the Internal Revenue Code (IRC) contains a similar anti-

alienation provision for retirement plan funds).

¶ 6 Both ERISA and IRC further provide, however, that the anti-alienation provisions do not apply to retirement funds that are assigned to a former spouse under a QDRO. 29 U.S.C. § 1056(d)(3) (2006); 26 U.S.C. § 401(a)(13)(B) (2006); *Boggs,* 520 U.S. at 846, 117 S.Ct. 1754; *Hawkins v. Comm'r of Internal Revenue,* 86 F.3d 982, 988 (10th Cir.1996); *In re Marriage of LeBlanc,* 944 P.2d 686, 688 (Colo.App.1997).

### 1. QDRO

¶ 7 A QDRO is a mechanism created under ERISA to allow a former spouse to receive all or a portion of the benefits owed to a participant under a retirement plan. *See Boggs,* 520 U.S. at 846–47, 117 S.Ct. 1754; *see also Rafferty–Plunkett v. Plunkett,* 392 Ill.App.3d 100, 331 Ill.Dec. 261, 910 N.E.2d 670, 672 n. 1 (2009) (describing QDRO as "a creature of" ERISA); *Barnes v. Barnes,* 181 Md.App. 390, 956 A.2d 770, 789–90 (2008) (same). A QDRO is defined as a "domestic relations order" that assigns to an alternate payee the right to receive all or a portion of the benefits payable to a participant. 29 U.S.C. § 1056(d)(3)(B)(i) (2006); *Boggs,* 520 U.S. at 846, 117 S.Ct. 1754; *see also* 26 U.S.C. § 414(p)(1)(A) (2006). A "domestic relations order" in turn is defined as an order made pursuant to state domestic relations law that concerns the provision of child or spousal support, or marital property rights of a former spouse of a plan participant. 29 U.S.C. § 1056(d)(3)(B)(ii) (2006); *Boggs,* 520 U.S. at 846, 117 S.Ct. 1754; *see also* 26 U.S.C. § 414(p)(1)(B) (2006).

¶ 8 Here, the QDRO was entered expressly as a means to satisfy husband's unpaid obligations relating to the dissolution, including those for child support, maintenance, and attorney fees under section 14–10–119, C.R.S.2012. Thus, the QDRO originated under Colorado domestic relations law, as required by ERISA, and not, as husband contends, under Colorado collections law.[1]

---

1. Husband suggests in a footnote in his brief on appeal that a QDRO may not extend to attorney fees, expert witness fees, and the parties' 2009 tax liability. We do not address this contention

because it was raised in a cursory manner. *See Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo.App.2010) (court will not consider bald

### 2. Support Arrearages

¶9 A QDRO is not only a mechanism to divide retirement benefits between spouses under the marital property provisions of a dissolution decree; it may also be used, under ERISA, to enforce maintenance and child support obligations imposed under the decree. *See LeBlanc,* 944 P.2d at 688–89. A QDRO issued for this purpose does not result in an improper modification of the property division provisions of the decree. *See Hogle v. Hogle,* 732 N.E.2d 1278, 1284 (Ind.Ct.App.2000); *In re Marriage of Bruns,* 535 N.W.2d 157, 161–62 (Iowa Ct.App.1995); *Baird v. Baird,* 843 S.W.2d 388, 391–92 (Mo. Ct.App.1992); *Nichols v. Nichols,* 891 P.2d 1303, 1306 (Okla.Civ.App.1995).

¶10 Further, the decree need not expressly provide that support payments will be paid from retirement funds. *See In re Marriage of Thomas,* 339 Ill.App.3d 214, 273 Ill.Dec. 647, 789 N.E.2d 821, 831–32 (2003) (rejecting obligor husband's argument that parties' settlement agreement, under which wife waived any right to his retirement benefits, precluded the court from assigning his benefits under a QDRO to satisfy maintenance and child support arrearages); *Baird,* 843 S.W.2d at 391–92 (reversing trial court order dismissing QDRO as to pension funds that were awarded solely to the obligor spouse under the decree).

¶11 On this issue, we decline to follow *Hoy v. Hoy,* 29 Va.App. 115, 510 S.E.2d 253, 254–55 (1999), which held that using a QDRO to collect unpaid spousal support from the obligor spouse's retirement funds constituted an improper modification of the dissolution decree. *See Thomas,* 273 Ill.Dec. 647, 789 N.E.2d at 831 (agreeing with the "quantum of persuasive authority" permitting use of a QDRO to assign retirement benefits to satisfy past due maintenance and child support obligations); *Hogle,* 732 N.E.2d at 1283–84 (rejecting *Hoy* in favor of other authorities holding that a QDRO is an appropriate mechanism for enforcing support arrearages); *see also* Michael P. Boulette, *Collecting Child Support and Maintenance: A New Role for QDROs,* 69 Bench & Bar of Minn. 20, 22

legal proposition presented without argument or

(Oct. 2012) (noting that the use of QDROs to enforce past due support has "received increasing approval across the country" and that "the reasoning employed by the Virginia court in *Hoy* does not appear to have gained wide acceptance"); Laura W. Morgan, *Using QDROs to Enforce Spousal and Child Support,* 13 No. 1 Divorce Litig. 7 (Jan.2001) ("Congress has made it clear that QDROs may be used to enforce spousal and child support obligations. To do so is not an impermissible modification of a property division award, but only a means of enforcement of an obligation. It is time Virginia reversed the *Hoy* decision and got with the program.").

¶12 Accordingly, the trial court did not violate the anti-alienation provisions of ERISA and IRC by issuing the QDRO here to enforce husband's unpaid support obligations.

### C. ERISA Preemption of State Law

¶13 Husband also argues that regardless of the QDRO exception to ERISA's anti-alienation clause, his retirement benefits are exempt under Colorado law because section 13–54–102(1)(s), C.R.S.2012, exempts pension or retirement plan funds, including those subject to ERISA, "from levy and sale under writ of attachment or writ of execution." *See LeBlanc,* 944 P.2d at 687. Wife contends that the ERISA exception for QDRO transfers applies here, which we construe as an argument that section 13–54–102(1)(s) is preempted by ERISA. We address this issue and hold that the statute is preempted by ERISA because it imposes limitations not imposed by ERISA.

¶14 Three types of preemption may apply when federal law preempts a particular state statute: (1) direct or conflict preemption, which occurs when a state statute directly conflicts with a federal statute; (2) statutory or express preemption, which occurs when a federal statute expressly states that it preempts state laws; and (3) field preemption, which occurs when federal law occupies a legislative field such that no room is left for state law to supplement it. *See In*

development).

*re Estate of MacAnally,* 20 P.3d 1197, 1201 (Colo.App.2000).

¶ 15 ERISA contains an express preemption provision as to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (2006); *see also MacAnally,* 20 P.3d at 1201. ERISA further provides an exception to preemption specifically for QDROs. *See* 29 U.S.C. § 1144(b)(7) (2006). Under this provision, state courts are not preempted from issuing QDROs to transfer retirement benefits that are held in plans governed by ERISA. *See Boggs,* 520 U.S. at 846–48, 117 S.Ct. 1754. State laws may not conflict with ERISA provisions governing such QDROs, however. *See United States v. Taylor,* 338 F.3d 947, 951 (8th Cir. 2003) ("ERISA provides a mechanism for enforcing QDROs, and this mechanism supersedes any contrary state law.").

■ ¶ 16 Under conflict preemption, a state law directly conflicts with ERISA, and is thus preempted, when compliance with both state law and ERISA is impossible or when the state law stands as an obstacle to accomplishing the purposes and objectives of ERISA. *See Boggs,* 520 U.S. at 844, 117 S.Ct. 1754 ("In the face of [a] direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand."); *see also MacAnally,* 20 P.3d at 1202. Conflict preemption applies when this test is met, regardless of whether other types of preemption apply. *See MacAnally,* 20 P.3d at 1202–03 (citing *Painter v. Golden Rule Ins. Co.,* 121 F.3d 436, 439 (8th Cir. 1997)).

¶ 17 We conclude that section 13–54–102(1)(s) conflicts with ERISA, and is thus preempted by ERISA, to the extent that it imposes additional limitations, not imposed by ERISA, on a spouse's right to receive retirement plan funds under a QDRO. *See Gandy v. Colo. Dep't of Corr.,* 2012 COA 100, ¶¶ 25–27, 284 P.3d 898 (state regulation rendering foreign offenders serving life sentences ineligible for transfer to their home countries conflicted with and was thus preempted by federal treaty permitting such transfers for Canadian offenders); *Timm v. Prudential Ins. Co. of Am.,* 259 P.3d 521, 526 (Colo.App.2011) (holding that ERISA remedy for unreasonable withholding of benefits preempted section 10–3–1116(1), C.R.S.2012, which provides for additional remedies when benefits are unreasonably withheld).

¶ 18 Our conclusion is consistent with decisions from other courts. The Oklahoma Court of Appeals held that a state statute, which, like section 13–54–102(1)(s), exempted retirement benefits from attachment or execution for payment of debt, was preempted by ERISA, and thus did not prevent a former spouse from accessing such benefits using a QDRO. *See Nichols,* 891 P.2d at 1305. The court held, "To the extent that there are limitations on the assignment or alienation of Plan benefits, they must be found within the provisions of ERISA itself and not within the Oklahoma statute." *Id.*

¶ 19 Similarly, in *Thomas,* the Illinois court held that a state statute exempting retirement funds from attachment or execution did not bar assigning an obligor spouse's ERISA retirement funds under a QDRO to satisfy past due maintenance and child support. *See* 273 Ill.Dec. 647, 789 N.E.2d at 831; *see also Taylor,* 338 F.3d at 951 (former spouse of ERISA plan participant was not required to comply with state laws for establishing lien priority as to QDRO); *Cooper Indus., Inc. v. Compagnoni,* 162 F.Supp.2d 702, 712 (S.D.Tex.2001) (ERISA's QDRO procedure supersedes state execution procedures because forcing plan administrators to determine priority according to the laws of various states is contrary to ERISA's goal of national uniformity); *cf. Operating Engineers' Local No. 428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196, 198–201 (9th Cir.1981) (state law permitting garnishment of ERISA pension funds for support arrearages was not preempted by ERISA because it was consistent with ERISA's objective of not interfering with enforcement of state domestic support obligations).

¶ 20 Further, the interpretation of section 13–54–102(1)(s) urged by husband would allow him to avoid paying his support obligations under a QDRO even though the federal statute, *under which the QDRO was specifically created,* does not permit such a result. *See In re Marriage of Roosa,* 89 P.3d

524, 528 (Colo.App.2004) ("[W]e will not read a statute to provide an unreasonable or absurd result.").

¶ 21 As the Illinois court noted in *Thomas*, "Society places a higher value on the timely payment of maintenance and child support than on the future receipt of pension benefits." 273 Ill.Dec. 647, 789 N.E.2d at 831. Thus, a former spouse seeking assignment of retirement funds under a QDRO to satisfy support arrearages is not a typical creditor who is precluded under state exemption statutes from reaching such funds. *Id.*

¶ 22 Because we conclude that section 13–54–102(1)(s) is preempted by ERISA, and thus does not prevent wife from accessing husband's retirement funds using the QDRO, we need not reach husband's further contention that the section 13–54–102(3), C.R.S. 2012, exception for child support debt does not apply because his retirement funds are not "earnings."

¶ 23 Husband further argues that *In re Marriage of Gray*, 813 P.2d 819, 820 (Colo. App.1991), which provides that a trial court may not order that property awarded to a spouse in a dissolution proceeding be used to pay maintenance to the other spouse, also precludes the trial court's issuance of the QDRO here. However, this principle from *Gray* applies only in the context of an initial award of maintenance at permanent orders, and does not limit the property that a recipient spouse may access to *enforce* a support obligation after a default by the obligor spouse. *See In re Marriage of Gedgaudas*, 978 P.2d 677, 682 (Colo.App.1999).

▪ ¶ 24 We do not address husband's arguments, which he raises for the first time in the reply brief, that wife did not reduce her arrearages to final judgment, and that her arrearages calculations are erroneous. *See W. Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1160 (Colo.App.2008) (declining to address argument not made in opening brief). Further, we do not consider the arrearages exhibit appended to husband's reply brief, which does not appear to be part of the certified record from the trial court. *See In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo.App.2006) ("Only facts appearing in the record can be reviewed....").

## III.  Noncompliance Order

▪ ¶ 25 Husband further contends that the trial court erred by entering the noncompliance order, without a hearing, after he did not cooperate with the QDRO transfer. We are not persuaded.

¶ 26 Because the record reflects that husband did not request that the trial court conduct a hearing concerning the QDRO transfer, we discern no error by the court in not doing so. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n. 4 (Colo.App.2011) (ground for relief not raised in district court will not be reviewed on appeal); *cf. In re Marriage of Aldrich*, 945 P.2d 1370, 1380 (Colo.1997) (trial court need not hold a hearing sua sponte concerning reasonableness of attorney fees).

¶ 27 Husband has not explained the legal basis, or provided supporting authority, for his general contention that the noncompliance order is unfair and erroneous. Thus, we do not disturb the order. *See Biel v. Alcott*, 876 P.2d 60, 64 (Colo.App.1993) ("An appealing party bears the burden to provide supporting authority for contentions of error asserted on appeal, and a failure to do so will result in an affirmation of the judgment."); *Westrac, Inc. v. Walker Field*, 812 P.2d 714, 718 (Colo.App.1991) ("Because defendant has failed to specify why the trial court erred, we will not review the ruling.... "). We have not considered husband's arguments, which he also raises for the first time in the reply brief, that the noncompliance order did not meet the requirements of C.R.C.P. 107, and constituted an improper modification of parenting time. *See W. Innovations, Inc.*, 187 P.3d at 1160.

¶ 28 In light of our disposition to affirm the trial court's orders, we deny husband's unsupported requests for damages and for reallocation of tax liabilities and escrow funds on remand.

## IV.  Appellate Attorney Fees and Sanctions

¶ 29 Wife requests her attorney fees incurred on appeal under section 14–10–119, and sanctions against husband under C.A.R.

38(d), which allows for an award of damages, including attorney fees, to an appellee in the case of a frivolous appeal. *See Hamilton v. Noble Energy, Inc.*, 220 P.3d 1010, 1014 (Colo.App.2009).

¶ 30 Although we acknowledge that husband's arguments are in part not supported by legal argument or authorities, we do not view the entire appeal as frivolous under the standard required by C.A.R. 38(d), and thus decline to impose sanctions. *See Mission Denver Co. v. Pierson*, 674 P.2d 363, 365–66 (Colo.1984) (C.A.R.38(d) should be used to impose sanctions only in clear cases when the appellant has presented no rational argument in support of a claim or the appeal is prosecuted for the sole purpose of harassment or delay); *see also Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 934–35 (Colo. 1993).

¶ 31 Wife may raise her request in the trial court for appellate attorney fees under section 14–10–119. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 43, 292 P.3d 1214; *In re Marriage of Leverett*, 2012 COA 69, ¶ 28, 318 P.3d 31.

¶ 32 The orders are affirmed.

JUDGE GRAHAM and JUDGE HAWTHORNE concur.