**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

HILLARY ANN DIAMOND EVANS, as Executor of the Estate of Gregory C. Diamond and Trustee of the Gregory C. Diamond Family Living Trust; THE ESTATE OF GREGORY C. DIAMOND; THE GREGORY C. DIAMOND FAMILY LIVING TRUST,

    Plaintiffs - Appellants,

v.

BETTY EILEEN DIAMOND,

    Defendant - Appellee.

No. 19-4083

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:18-CV-00722-CW-PMW)

---

Brittany Frandsen (James W. McConkie III with her on the briefs), Workman Nydegger, Salt Lake City, Utah, for Appellants.

Daniel S. Sam, Sam, Reynolds & Van Oostendorp, P.C., Vernal, Utah, for Appellee.

---

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. Introduction[1]

Plaintiffs-Appellants, (collectively referred to as the "Estate"), brought this action against Defendant-Appellee, Betty Eileen Diamond ("Diamond"), the former wife of Gregory Diamond (the "Decedent"). The complaint alleges the Decedent was a federal employee who had a Thrift Savings Plan account (the "TSP Account") administered by the Federal Retirement Thrift Investment Board ("FRTIB"). TSP accounts are a "type of retirement savings account offered to federal employees." *Woody v. U.S. Dep't of Justice (In re Woody)*, 494 F.3d 939, 945 n.4 (10th Cir. 2007). During Diamond's marriage to the Decedent, she was the named beneficiary of Decedent's TSP Account. When Diamond and the Decedent divorced in 2013, they entered into a divorce decree containing the following provision relevant to the Decedent's TSP Account: "The parties have acquired an interest in retirement accounts during the course of the marriage. [Diamond] waive[s] her interest in [Decedent's] retirement accounts. Therefore, [Decedent] is awarded any and all interest in his retirement accounts, free and clear of any claim of [Diamond]." When the Decedent died in 2017, however, Diamond was still designated as the beneficiary of the TSP Account.

---

[1]Any facts set out in this opinion were not found by the district court but were presumed to be true for purposes of resolving Diamond's motion to dismiss.

The Estate requested that Diamond waive all her interest in any distribution she received from the TSP Account. After Diamond refused and indicated her intent to retain any monies distributed to her, the Estate filed a declaratory judgment action against her in Utah's Third Judicial District Court. Diamond removed the case to federal district court and filed a motion to dismiss the Estate's complaint. The district court granted the motion, concluding the Estate's breach of contract claims against Diamond are preempted by federal law governing the administration of TSP accounts. *Evans v. Diamond*, 389 F. Supp. 3d 979, 985 (D. Utah 2019).

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the ruling of the district court. The court correctly concluded the relevant provisions of the Federal Employee Retirement Systems Act ("FERSA"), 5 U.S.C. §§ 8401-8480, preempt any conflicting Utah state property rights.

## II.    Discussion

A district court's dismissal of a complaint for failure to state a claim is reviewed de novo by this court. *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted. We accept all well-pled factual allegations as true and

view these allegations in the light most favorable to the nonmoving party." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quotation and citation omitted). The Estate alleges that Diamond's retention of any monies she receives from the Decedent's TSP Account would be a breach of the agreement set out in the Utah divorce decree. Diamond argues that any state claim related to distributions from the TSP Account is preempted by FERSA. Thus, the question presented in this appeal is purely legal. If the claims raised in the Estate's complaint, even assuming they can be proved, are preempted by federal law, the Estate's complaint must be dismissed.

"State law is pre-empted to the extent of any conflict with a federal statute." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (quotation omitted). Such conflict preemption occurs "where it is impossible for a private party to comply with both state and federal law" and where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (quotation omitted). Whether a state-law claim over the distribution from a decedent's TSP account is preempted by FERSA is a matter of first impression in this Circuit. Materially similar issues involving other federal statutes, however, have been addressed several times by the United States Supreme Court. In those cases, the

Court repeatedly struck down state court judgments having the effect of diverting proceeds from designated beneficiaries.

In 1950, the Supreme Court addressed whether the National Service Life Insurance Act of 1940 ("NSLIA") preempted a state-law action by an insured's widow to recover a portion of the proceeds paid to the insured's designated beneficiary. *Wissner v. Wissner*, 338 U.S. 655, 656 (1950). The Court considered the "controlling section of the Act," to be the one regulating the insured's power to designate a beneficiary. *Id*. at 658. That provision of NSLIA directed that the insured "shall have the right to designate the beneficiary or beneficiaries of the insurance (within a designated class) . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries." *Id*. (quotation omitted). The Court concluded this language showed "Congress ha[d] spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id*. It further concluded that ordering a portion of the proceeds to be transferred to the insured's widow pursuant to state community property law would improperly "substitute[]" the widow for "the beneficiary Congress directed shall receive the insurance money." *Id*. at 658-59. The Court determined any such order would impermissibly "nullif[y] the [insured's] choice and frustrate[] the deliberate purpose of Congress," regardless of whether the order was "directed at the very money received from the Government [by the designated beneficiary] or an

-5-

equivalent amount." *Id*. at 659. Further, because NSLIA contained an anti-attachment provision,[2] the Court held that future payments made to the designated beneficiary could not be subject to a state-court order without also thwarting congressional intent. *Id*. at 659-60. Its analysis of the relevant provisions of NSLIA led the Court to conclude "that the chosen beneficiary of the life insurance policy shall be, during life, the sole owner of the proceeds." *Id*. at 660.

In *Ridgway v. Ridgway*, the Supreme Court applied the reasoning in *Wissner* to the distribution of life insurance proceeds under the Servicemen's Group Life Insurance Act of 1965 ("SGLIA"). 454 U.S. 46, 47 (1981). It held that SGLIA and its implementing regulations preempted the imposition of a state-law constructive trust upon any policy proceeds paid to the properly designated beneficiary. *Id*. at 62-63. In reaching this conclusion, the Court relied on SGLIA's statutory "order of precedence," which provided that "the proceeds of a policy are paid first to such beneficiary or beneficiaries as the member . . . may have designated by [an appropriately filed] writing." *Id*. at 52 (quotation omitted). If no such beneficiary was designated, the statute directed the proceeds be paid to the individuals in the order set out in the order-of-precedence

---

[2]Under the anti-attachment provision, "[p]ayments to the named beneficiary shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Wissner v. Wissner*, 338 U.S. 655, 659 (1950).

provision. *Id.* ("If there be no such designated beneficiary, the proceeds go to the widow or widower of the service member or, if there also be no widow or widower, 'to the child or children of such member . . . and descendants of deceased children by representation.' Parents, and then the representative of the insured's estate (an obvious bow at this point in the direction of state law), are next in order."). The Court held that the order-of-precedence provision showed "'Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.'" *Id.* at 56 (quoting *Wissner*, 338 U.S. at 658). The Court recognized "small differences" between SGLIA and NSLIA with respect to how to designate and change a beneficiary, but concluded SGLIA's "unqualified directive to pay the proceeds to the properly designated beneficiary" per the statutory order of precedence "clearly suggests that no different result was intended by Congress." *Id.* at 57.

The Court reaffirmed the principles set out in *Wissner* and *Ridgway* in *Hillman v. Maretta*, 569 U.S. 483 (2013). *Hillman* involved a life insurance policy governed by the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA"). *Id.* at 485. The insured named his first wife as the beneficiary of his insurance policy. *Id.* at 488. Several years after the couple divorced, the insured remarried but failed to change the beneficiary designation. *Id.* at 489. When the insured died, the policy benefits were paid to his first wife in

accordance with the governing federal statute. *Id*. The insured's second wife sued the designated beneficiary, raising a Virginia state-law claim that, if successful, would have made the beneficiary personally liable for the amount the beneficiary received in insurance proceeds from the FEGLIA policy. *Id*. The Supreme Court held the Virginia statute was preempted, concluding: "[A]pplicable state law substitutes the widow for the beneficiary Congress directed shall receive the insurance money, and thereby frustrates the deliberate purpose of Congress to ensure that a federal employee's named beneficiary receives the proceeds." *Id*. at 494 (citation and quotation omitted). Directly relevant to the issue before this court, the Supreme Court further explained: "It makes no difference whether state law requires the transfer of the proceeds . . . or creates a cause of action[] . . . that enables another person to receive the proceeds upon filing an action in state court. In either case, state law displaces the beneficiary selected by the insured in accordance with FEGLIA and places someone else in her stead." *Id*. Also relevant is the Court's description of FEGLIA as "strikingly similar" to the statutes it analyzed in *Wissner* and *Ridgway* because all three "create[d] a scheme that gives highest priority to an insured's designated beneficiary." *Id*. at 493. The Court described FEGLIA's "order of precedence" as "nearly identical" to the order of precedence in *Ridgway* because

"[b]oth require that the insurance proceeds be paid first to the named beneficiary ahead of any other potential recipient." *Id*. at 493-94.

TSP accounts are governed by FERSA. *See* 5 U.S.C. §§ 8401–8480. In light of the Supreme Court precedent discussed above, the provisions of FERSA relevant to the matter before this court are those governing beneficiary designations. FERSA permits an employee[3] to "designate one or more beneficiaries." *Id*. § 8424(c). It then expressly sets out an "order of precedence," dictating how distributions must be made:

> (d) Lump-sum benefits . . . shall be paid to the individual or individuals surviving the employee or Member and alive at the date title to the payment arises in the following order of precedence, and the payment bars recovery by any other individual:
>
> First, to the beneficiary or beneficiaries designated by the employee or Member in a signed and witnessed writing received in the Office before the death of such employee or Member. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee or Member.
>
> Third, if none of the above, to the child or children of the employee or Member and descendants of deceased children by representation.
>
> Fourth, if none of the above, to the parents of the employee or Member or the survivor of them.

---

[3]The term "employee" is defined in 5 U.S.C. § 8401(11).

-9-

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee or Member.

Sixth, if none of the above, to such other next of kin of the employee or Member as the Office determines to be entitled under the laws of the domicile of the employee or Member at the date of death of the employee or Member.

*Id*. § 8424(d).  Thus, if a beneficiary is designated in a signed and witnessed writing delivered to the Office of Personnel Management, FERSA's "order of precedence" provision requires that the decedent's benefits "shall be paid" to that beneficiary.  *Id*.  Furthermore, payment "bars recovery by any other individual." *Id*.

As the Supreme Court did in *Hillman*, we first ascertain the "nature of the federal interest" at issue.  569 U.S. at 491.  FERSA's order-of-precedence provision clearly and unequivocally states that any balance in an employee's TSP account at the time of his death shall be paid to his designated beneficiary.  This express directive is not materially different from the order-of-precedence provisions examined by the Court in *Ridgway* and *Hillman*.  Thus, we can confidently conclude that the federal interest at issue in this matter is the "authority of Congress to control payment of the proceeds" of TSP accounts.  *See Ridgway*, 454 U.S. at 56.  Other language in FERSA bolsters our conclusion Congress intended that the beneficiary properly designated by an employee before his death shall receive the monies in the employee's TSP account free and clear of

any claim by any other individual or entity. FERSA's order of precedence expressly bars any claim to a TSP account based on "a designation, change, or cancellation of beneficiary in a will or other document." 5 U.S.C. § 8424(d). The statute, accordingly, restricts the method by which an employee may designate his beneficiary and prohibits distributions to anyone other than the properly designated beneficiary.[4] The order-of-precedence provision also expressly states that payment to the designated beneficiary "bars recovery by any other individual." *Id*. FERSA also contains the following anti-attachment provision applicable to distributions made pursuant to the order-of-precedence provision: "Any amount payable under subchapter II . . . of this chapter is not assignable, either in law or equity, except under the provisions of section 8465 or 8467, or subject to execution, levy, attachment, garnishment or other legal process, except as otherwise may be provided by Federal laws." *Id*. § 8470(a).

The Estate argues the order-of precedence and anti-attachment provisions in FERSA are for administrative convenience only and do not show a congressional intent to ensure Diamond receives the proceeds free of its competing claim. According to the Estate, its state-law claims will not usurp the Decedent's beneficiary designation because it is not seeking payment directly from the TSP

---

[4]For purposes of Diamond's motion to dismiss, she was presumed to be the designated beneficiary. *Evans v. Diamond*, 389 F. Supp. 3d 979, 985 (D. Utah 2019).

Account. Instead, it is seeking the imposition of a constructive trust on any monies the beneficiary receives. Thus, as the argument goes, there is no longer a federal interest at stake once Diamond, the designated beneficiary, receives the benefits. This argument was considered and rejected by the Supreme Court in *Hillman*.

In *Hillman*, the plaintiff pursued claims based on a Virginia state statute that imposed liability on the designated beneficiary for the amount the beneficiary received from the decedent's FEGLIA insurance policy. 569 U.S. at 494. Like the Estate argues here, the plaintiff asserted FEGLIA's order of precedence was for "administrative convenience" only and permitting a state "cause of action [that] takes effect only after benefits have been paid, . . . would not necessarily impact the Government's distribution of insurance proceeds." *Id*. at 491. Relying on *Wissner*[5] and *Ridgway*,[6] and referencing the provision of FEGLIA that "gives

---

[5]In *Wissner*, the Supreme Court concluded NSLIA preempted state law even though the question before the Court was whether a judgment could be entered against the designated beneficiary for the amount of benefits that had been (and would be) paid to her. 338 U.S. at 658. The Court explained its reasoning very clearly, stating: "Whether directed at the very money received from the Government [by the designated beneficiary] or an equivalent amount" in the form of a judgment against her, such a judgment would "nullif[y] the [insured's] choice and frustrate[] the deliberate purpose of Congress." *Id*. at 659.

[6]In *Ridgway*, the Supreme Court alternatively relied on the anti-attachment provision in SGLIA to conclude a constructive trust could not be imposed on insurance proceeds that had already been distributed to the properly designated beneficiary. *Ridgway v. Ridgway*, 454 U.S. 46, 61 (1981) ("We find nothing to
(continued...)

-12-

highest priority to an insured's designated beneficiary," *id*. at 493, the Court

rejected the plaintiff's argument, concluding the "deliberate purpose of Congress

[was] to ensure that a federal employee's named beneficiary receives the

proceeds." *Id*. at 494 (quotation omitted). It concluded the Virginia law at issue

"interferes with Congress' scheme, because it directs that the proceeds actually

'belong' to someone other than the named beneficiary by creating a cause of

action for their recovery by a third party." *Id*. The Court clearly held that when a

federal statute requires that an amount be distributed to a properly designated

beneficiary, Congress intended "that the beneficiary can use them," *id*. at 495, and

any monies owed to the beneficiary "cannot be allocated to another person by

operation of state law," *id*. at 497.

The Estate argues *Wissner*, *Ridgway*, and *Hillman* are inapposite with

respect to the question of whether a post-distribution lawsuit is preempted

because those cases involved insurance proceeds, not retirement benefits. The

---

[6](...continued)
indicate that Congress intended to exempt claims based on property settlement agreements from the strong language of the anti-attachment provision."). Although the statute at issue in *Hillman* did not contain an anti-attachment provision, the Court nonetheless held that a state post-distribution claim was preempted. *Hillman v. Maretta*, 569 U.S. 483, 497-98 (2013). As set out *infra*, FERSA contains an anti-attachment provision. 5 U.S.C. § 8470(a). This provision, coupled with the reasoning in *Ridgway*, is sufficient to support our conclusion that the Estate's post-distribution claims are preempted. *Hillman*, however, settles the question.

-13-

Estate advocates for the approach suggested in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, a Supreme Court case addressing post-death payments from a plan governed by the Employee Retirement Income Security Act ("ERISA"). 555 U.S. 285 (2009). In *Kennedy*, the Court held that the administrator of a decedent's ERISA plan correctly distributed benefits to the beneficiary designated by the decedent in the plan documents even though the beneficiary had previously waived her right to those benefits in a divorce decree. *Id*. at 288. The Court, however, left open the possibility of a post-distribution lawsuit, stating it was not "express[ing] any view as to whether the [decedent's] Estate could have brought an action in state or federal court against [the beneficiary] to obtain the benefits after they were distributed." *Id*. at 299 n.10.

According to the Estate, both FERSA and ERISA involve retirement benefits and the primary purpose of a retirement fund is to provide benefits to the employee during his lifetime, not to provide a distribution to the designated beneficiary upon the employee's death. Thus, it argues, *Kennedy* stands for the proposition that post-distribution suits would not frustrate the purpose of FERSA because they do not frustrate the purpose of ERISA. This argument ignores the fact that unlike FERSA, ERISA does not contain a statutory order of precedence relating to the distribution of plan benefits upon the death of a participant. Thus, the Estate's position is inconsistent with Supreme Court precedent holding that

congressional purpose is embodied in order-of-precedence provisions and permitting a post-distribution lawsuit would "frustrate[] the deliberate purpose of Congress to ensure that a federal employee's named beneficiary receives the proceeds." *Hillman*, 569 U.S. at 494 (quotation omitted). Accordingly, we conclude *Kennedy* is not relevant to statutes like FERSA that contain clear order-of-precedence provisions.

Because, as discussed above, FERSA contains a provision requiring that distributions be made to the employee's designated beneficiary that is materially identical to the one addressed by the Supreme Court in *Hillman*, we conclude the Court's holding in *Hillman* with respect to post-distribution lawsuits resolves the Estate's argument. Any order requiring Diamond to hold monies she receives from the TSP Account in a constructive trust is the economic equivalent of an order directing that those monies be distributed to the Estate. Such an order would frustrate the scheme adopted by Congress in FERSA. As in *Hillman*, this is true even though the Estate is seeking the imposition of a constructive trust and not a direct distribution from the TSP Account. Moreover, the fact this case concerns a beneficiary's waiver, rather than the policyholder's breach of an agreement or a surviving spouse's statutory cause of action, is of no significance. Because any relief obtained by the Estate under Utah law would interfere with the express federal interest of ensuring that Diamond, the properly designated

-15-

beneficiary, retain the entirety of the distribution she receives, the Estate's post-distribution claims are preempted.

The Estate raises an additional argument that merits discussion. It asserts there is a presumption against federal preemption in family law cases. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) ("State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." (quotations omitted)). While the Supreme Court has expressly recognized "the limited application of federal law in the field of domestic relations generally," it has nonetheless held that "a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." *Ridgway*, 454 U.S. at 54, 55. The Supreme Court's holdings in *Wissner*, *Ridgway*, and *Hillman*, clearly establish that any presumption in favor of state family law is overcome when the federal statute at issue expressly requires that benefits be paid to a properly designated beneficiary. As we concluded above, FERSA contains such clear language.

## III. Conclusion

The judgment of the district court granting Diamond's motion to dismiss the Estate's complaint is **affirmed**.