The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 27, 2021

**2021COA75**

**No. 20CA0038** *Ragan v. Ragan* **— Employment Law — ERISA; General Provisions Concerning Probate and Nonprobate Transfers — Revocation of Probate and Nonprobate Transfers by Divorce**

This appeal concerns the interplay between Colorado's divorce revocation statute, section 15-11-804, C.R.S. 2020, under which any beneficiary designation of a former spouse is automatically revoked upon divorce, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, under which an ERISA plan administrator must distribute plan proceeds to the beneficiary named in the plan. In *In re Estate of MacAnally*, 20 P.3d 1197, 1203 (Colo. App. 2000), a division of this court held that ERISA preempts the divorce revocation statute in the "pre-distribution" context by requiring plan proceeds to be distributed to the named beneficiary. A division of the court of

appeals now recognizes that ERISA preemption extends to post-distribution lawsuits pursuant to section 15-11-804(8)(b). The division therefore concludes as a matter of first impression in Colorado that, absent an express waiver of rights to the proceeds, ERISA precludes a lawsuit against a former spouse to recover insurance proceeds that were distributed to her as the named beneficiary.

COLORADO COURT OF APPEALS                                    **2021COA75**

Court of Appeals No. 20CA0038
El Paso County District Court No. 19CV31274
Honorable Gregory R. Werner, Judge

Rozalyn Ragan, Personal Representative of the Estate of Charles Phillip Ragan,
Deceased,

Plaintiff-Appellant,

v.

Melissa Ragan, a/k/a Melissa Hudson,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
J. Jones and Navarro, JJ., concur

Announced May 27, 2021

The Drexler Law Group, LLC, Matthew B. Drexler, Brian Melton, Stephen A.
Brunette, Colorado Springs, Colorado, for Plaintiff-Appellant

The Gasper Law Group, PLLC, Kenneth H. Gray, Jack Roth, Colorado Springs,
Colorado, for Defendant-Appellee

¶ 1    At the time of Charles Phillip Ragan's death, his ex-wife, Melissa Ragan, a/k/a Melissa Hudson, remained the named beneficiary of his employer-sponsored life and accidental death insurance policies.  After the insurance proceeds were distributed to Ms. Ragan, Mr. Ragan's estate (Estate) sued her to recover those proceeds.

¶ 2    The Estate's case implicates the interplay between Colorado's divorce revocation statute, section 15-11-804, C.R.S. 2020, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, which the parties agree governs the insurance policies.  On one hand, ERISA provides that an employee benefit plan "shall . . . specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and make payments to a beneficiary who is "designated by a participant, or by the terms of an employee benefit plan," 29 U.S.C. § 1002(8).  ERISA also provides that it "shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).

¶ 3     On the other hand, section 15-11-804(2)(a)(i) (subsection (2)) of Colorado's divorce revocation statute provides that any beneficiary designation of a then-spouse is automatically revoked upon divorce. Section 15-11-804(8)(b) (subsection (8)(b)) further provides that if "any part of this section is preempted by federal law," a former spouse "who . . . received a payment . . . to which that person is not entitled under this section is obligated to return that payment" or "is personally liable for the amount of the payment . . . , to the person who would have been entitled to it were this section or part of this section not preempted."

¶ 4     The Estate concedes that ERISA preempts subsection (2) and that the plan administrator properly distributed the insurance proceeds to Ms. Ragan. But the Estate argues that subsection (8)(b) allows the Estate to recover those proceeds from Ms. Ragan, who, by operation of subsection (2), was not entitled to those proceeds. The district court disagreed, concluding that subsection (8)(b), like subsection (2), is preempted by ERISA and

2

that the Estate therefore had "no legal interest" in the insurance proceeds.

¶ 5     We affirm the district court's judgment. In *In re Estate of MacAnally*, 20 P.3d 1197, 1203 (Colo. App. 2000), a division of this court held that ERISA preempts Colorado's divorce revocation statute in the "pre-distribution" context by requiring an ERISA plan administrator to distribute plan proceeds to the beneficiary named in the plan. We now recognize that ERISA preemption extends to post-distribution lawsuits. Based on our analysis of legal authority from other jurisdictions, we conclude as a matter of first impression in Colorado that, absent an express waiver of rights to the proceeds, ERISA precludes a lawsuit against a former spouse to recover insurance proceeds that were distributed to him or her as the named beneficiary.

## I.     Background

¶ 6     Charles and Melissa Ragan were married in 2012 and divorced in December 2016. Less than five months later, on May 13, 2017, Mr. Ragan died in a car-bicycle accident. Before the dissolution of the Ragans' marriage, Mr. Ragan took out several life and accidental death insurance policies through his employer, Federal

Express, all of which named Ms. Ragan as the beneficiary. Mr. Ragan did not change the beneficiary of these policies after his divorce from Ms. Ragan.

¶ 7    Shortly after Mr. Ragan's death, Ms. Ragan was notified of the existence of the policies and received benefits in the amount of approximately $535,000.  Ms. Ragan contends, and the Estate does not dispute, that she was unaware of the existence of the policies before Mr. Ragan's death.  No party asserts that Ms. Ragan waived or voluntarily relinquished her right to receive the insurance proceeds.

¶ 8    Following a hearing, a domestic relations court found that the insurance proceeds were not a material asset or liability of the marital estate, that no maintenance or child support obligations had to be secured with the proceeds, and that, therefore, the Estate's claim for recovery of the proceeds from Ms. Ragan was not within that court's continuing jurisdiction.

¶ 9    In May 2019, the Estate filed a complaint in district court against Ms. Ragan and her businesses,[1] seeking to recover the

---

[1] The complaint alleges that Ms. Ragan used the insurance proceeds to establish her businesses.

4

insurance proceeds pursuant to subsection (8)(b) and asserting related claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, civil theft, and piercing the corporate veil. The primary basis for the Estate's claims is that

> DECEDENT's designations of FORMER SPOUSE as beneficiary of said policies were revoked as a matter of law upon entry of the above-referenced Decree of Dissolution on December 28, 2016, under C.R.S. § 15-11-804(2)(a), with the same effect as if FORMER SPOUSE had disclaimed said beneficiary designations, under C.R.S. § 15-11-804(4).

Thus, the Estate alleges that "FORMER SPOUSE was not entitled to receive the insurance benefits specified above, and is obligated to return or repay same to the ESTATE, together with any benefits arising from payment of said benefits to her, under C.R.S. § 15-11-804(8)."

¶ 10     Ms. Ragan filed a motion for declaratory relief pursuant to C.R.C.P. 57 and a motion to dismiss pursuant to C.R.C.P. 12(b)(5). She argued that because ERISA preempts subsection (2) by requiring the insurance proceeds to be distributed to her, it likewise preempts subsection (8)(b) by precluding a post-distribution lawsuit against her to recover those proceeds. In response, the Estate

argued that although ERISA preempts subsection (2), it does not preempt subsection (8)(b) because attempting to recover benefits before they have been distributed to the beneficiary differs from attempting to recover benefits from the beneficiary after they have been disbursed.

¶ 11 The district court granted both of Ms. Ragan's motions. It concluded that precedent from the United States Supreme Court and other courts, including a division of this court, makes clear that ERISA preempts any revocation statute — like section 15-11-804 — that automatically revokes a beneficiary designation upon divorce. The only exception, the court explained, is in the context of waiver by private agreement between the parties. Because "no facts have been pled in this case that such an agreement exists" and "the Estate does not reference any such waiver in this case," the court concluded that ERISA preempts the Estate's post-distribution claims against Ms. Ragan to recover funds that were properly distributed to her as the named beneficiary.

¶ 12 The Estate filed a motion to alter or amend the judgment. The court denied the motion, noting that "all of the cases cited by [the

Estate] involve a purported voluntary relinquishment of a claim by the beneficiary" while this case, in contrast, involves the revocation of a beneficiary's interest by operation of state law.

## II.    Analysis

¶ 13    The Estate contends that the district court erred by concluding that ERISA preempts subsection (8)(b).[2]  Specifically, the Estate argues that ERISA does not preempt its claims because they are "for *post-distribution* recovery of insurance proceeds paid to a decedent's former spouse, and [are] *not* an action against an ERISA plan administrator to attempt to recover insurance proceeds prior to distribution by the ERISA plan administrator."  Ms. Ragan contends that the Estate's appeal is frivolous and requests an assessment of fees and costs as sanctions pursuant to C.A.R. 38(b).  After setting out the standard of review, we turn first to Colorado's divorce revocation statute, then to ERISA and the body of case law surrounding ERISA preemption.  We then address Ms. Ragan's request for sanctions.

---

[2] The Estate does not argue on appeal that its claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, civil theft, and piercing the corporate veil survive if ERISA preempts subsection (8)(b).

## A. Standard of Review

¶ 14　We review the district court's summary judgment ruling on a declaratory judgment claim under C.R.C.P. 57 de novo. *Fire House Car Wash, Inc. v. Bd. of Adjustment for Zoning Appeals*, 30 P.3d 762, 766 (Colo. App. 2001). We also review the district court's ruling on a motion to dismiss under C.R.C.P. 12(b)(5) de novo. *Scott v. Scott*, 2018 COA 25, ¶ 17. And we review the district court's statutory interpretation de novo. *In re Estate of Johnson*, 2012 COA 209, ¶ 8.

## B. Colorado's Divorce Revocation Statute

¶ 15　Subsection (2) provides that, with certain exceptions not applicable here, a divorce revokes any revocable disposition or appointment of property made by a divorced individual to the individual's then-spouse in a governing instrument, including a beneficiary designation in an insurance policy. § 15-11-804(2)(a)(i); *Estate of Johnson*, ¶ 9.

¶ 16　Subsection (8)(a) then provides that "a former spouse . . . who, not for value, received a payment . . . to which that person is not entitled under this section is obligated to return the payment . . . , or is personally liable for the amount of the payment . . . , to the

8

person who is entitled to it under this section." Subsection (8)(b) further provides that

> [i]f this section or any part of this section is preempted by federal law with respect to a payment . . . covered by this section, a former spouse . . . who, not for value, received a payment . . . to which that person is not entitled under this section is obligated to return that payment . . . , or is personally liable for the amount of the payment . . . , to the person who would have been entitled to it were this section or part of this section not preempted.

§ 15-11-804(8)(b).

## C.  ERISA

¶ 17    "ERISA is a comprehensive statute regulating employee pension and welfare plans." *Estate of MacAnally*, 20 P.3d at 1199. "The purpose of ERISA is 'to protect the interests of employees and their beneficiaries in employee benefit plans and to ensure that plans and plan sponsors are subject to a uniform body of benefit law . . . .'" *Id.* at 1201 (quoting *Barrett v. Hay*, 893 P.2d 1372, 1380 (Colo. App. 1995)).

¶ 18    ERISA provides that an employee benefit plan "shall . . . specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the fiduciary shall

9

administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D). Additionally, each ERISA-governed plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). With certain exceptions not relevant here, a plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

¶ 19 ERISA further contains an express preemption provision, 29 U.S.C. § 1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.

### D. Law Governing ERISA Preemption

¶ 20 Two types of preemption — statutory or express preemption and direct or conflict preemption — have been used to conclude that ERISA preempts state divorce revocation statutes.

¶ 21 Statutory or express "preemption occurs when a statute expressly states that it preempts other law." *Estate of MacAnally*, 20 P.3d at 1201. "In the ERISA context, ERISA preempts a state law pursuant to statutory [or express] preemption where a state law

10

relates to any employee benefit plan covered by ERISA." *Id.*; *see* 29 U.S.C. § 1144(a). A state law "'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Barrett*, 893 P.2d at 1376 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).

¶ 22    Direct or conflict preemption, in turn, occurs where "compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (citation omitted). "In the face of [a] direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand." *Id.*

¶ 23    In *Estate of MacAnally*, 20 P.3d at 1203, a division of this court held that ERISA preempts Colorado's divorce revocation statute in the "pre-distribution" context — that is, before benefits are distributed to a named beneficiary by an ERISA plan administrator. At the time of Richard MacAnally's death, his former spouse, Imogene Levin, remained the named beneficiary of his ERISA-governed annuity contracts. *Id.* at 1199. MacAnally's estate argued that Levin's designation as the beneficiary was revoked by

11

operation of law. *Id.* The division noted that, under 29 U.S.C. § 1104, an ERISA plan administrator must pay a death benefit to the beneficiary named in the plan (Levin) if the plan participant dies before retirement, while the divorce revocation statute, in contrast, changed the beneficiary to whom benefits must be paid from Levin to an unnamed beneficiary (MacAnally's estate). *Id.* at 1203. Under these circumstances, the division concluded, the divorce revocation statute directly conflicted with ERISA, and based on principles of direct or conflict preemption, ERISA preempted the divorce revocation statute. *Id.*

¶ 24 The year after *Estate of MacAnally*, the United States Supreme Court reached a similar conclusion. *See Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). In *Egelhoff*, a husband designated his wife as the beneficiary of an ERISA-governed life insurance policy provided by his employer. After the couple divorced, the husband failed to change the beneficiary of the life insurance policy. *Id.* at 144. When the husband died, the plan proceeds were paid to his ex-wife according to the pre-divorce beneficiary designation. The decedent's children from a previous marriage sued the ex-wife to recover the proceeds, citing a Washington statute that provided for

automatic revocation upon divorce of the designation of a former spouse as beneficiary. *Id.* at 144-45. Based on ERISA's express preemption provision, 29 U.S.C. § 1144(a), the Court held that ERISA preempted the Washington statute. *Egelhoff*, 532 U.S. at 146.

¶ 25 The Court reasoned that the Washington statute required plan administrators to pay benefits to the beneficiaries chosen by state law rather than to those identified in the plan documents. *Id.* at 147. This outcome, the Court said, contradicts ERISA's requirements that a plan "shall . . . specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), making payments to a beneficiary who is "designated by a participant, or by the terms of an employee benefit plan," 29 U.S.C. § 1002(8). *Egelhoff*, 532 U.S. at 147. Further, the Court concluded that the Washington statute interfered with ERISA's objective of nationally uniform plan administration, which enables employers to "establish a uniform administrative scheme" and provide "a set of standard procedures to guide processing of

claims and disbursement of benefits." *Id.* at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). No such uniformity can exist if plans are subject to different legal obligations in different states because plan administrators would need to know every state's law on this subject to determine whether the designation of a beneficiary had been revoked by operation of law. *Id.* at 149.

### E. ERISA Preempts Subsection (8)(b)

¶ 26  The Estate acknowledges that, under *Estate of MacAnally* and *Egelhoff*, subsection (2) is preempted by ERISA and that the plan administrator thus properly distributed the insurance proceeds to Ms. Ragan. However, the Estate contends that ERISA does not preempt the Estate's "post-distribution" suit under subsection (8)(b) to recover those funds.

¶ 27  The Estate bases its argument on *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), and *Andochick v. Byrd*, 709 F.3d 296 (4th Cir. 2013). In *Kennedy*, the Supreme Court held that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, notwithstanding the fact that the named beneficiary

14

signed a waiver disclaiming her right to the benefits. 555 U.S. at 288. But the Court left open the question of whether, once the benefits were distributed by the administrator, the plan participant's estate could enforce the named beneficiary's waiver against her. *Id.* at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the named beneficiary] to obtain the benefits after they were distributed.").

¶ 28    In *Andochick*, the Fourth Circuit took up the question left open by *Kennedy* and held that ERISA does not preempt "post-distribution suits to enforce state-law waivers" against ERISA beneficiaries. 709 F.3d at 299-301; *see also, e.g., Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 132 (3d Cir. 2012) (after ERISA plan administrator distributes funds to named beneficiary who waived her right to plan proceeds, plan participant's estate can sue named beneficiary to enforce her waiver and recover the funds); *Sweebe v. Sweebe*, 712 N.W.2d 708, 710 (Mich. 2006) ("While a plan administrator is required by ERISA to distribute plan proceeds to the named beneficiary, the named

15

beneficiary can then be found to have waived the right to retain those proceeds.").

¶ 29     The Estate argues that, if ERISA does not preempt post-distribution suits to enforce *express waivers* by named beneficiaries of their rights to ERISA plan proceeds, neither should it preempt a post-distribution suit based on a state statute that purports to divest a named beneficiary of her right to plan proceeds *by operation of law.* For three reasons, we are not persuaded.

¶ 30     First, none of the cases relied on by the Estate allows a state-law-based post-distribution claim for ERISA benefits in the absence of a waiver by the named beneficiary.[3] Indeed, several of

---

[3] During oral argument, counsel for the Estate appeared to argue that *Evans v. Diamond,* 957 F.3d 1098 (10th Cir. 2020), *Stillman v. Teachers Insurance & Annuity Ass'n College Retirement Equities Fund,* 343 F.3d 1311 (10th Cir. 2003), and *Walsh v. Montes,* 388 P.3d 262, 265 (N.M. Ct. App. 2016), allow post-distribution claims for ERISA-governed benefits based on a state statute. But none of these cases supports this proposition. *Evans,* 957 F.3d at 1104-05, held that a different federal statute, the Federal Employee Retirement Systems Act, preempted an estate's lawsuit to enforce a beneficiary's waiver and, in doing so, decided that *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan,* 555 U.S. 285, 299 n.10 (2009), was inapplicable. *Stillman,* 343 F.3d at 1314-23, did not involve ERISA preemption or ERISA-governed benefits. And *Walsh,* 388 P.3d at 266, involved a claim for recovery of ERISA-governed benefits based on an express waiver, not a state statute.

16

the cases explicitly distinguish between post-distribution suits to enforce waivers and post-distribution suits based on state divorce revocation statutes. In *Sweebe*, for example, the Michigan Supreme Court emphasized that its holding that a valid waiver is not preempted by ERISA was consistent with the principle that parties have a broad freedom to contract, 712 N.W.2d at 712, while, in contrast, a state statute that automatically revoked a beneficiary designation upon divorce would "clearly invade[] an area that is covered by ERISA," *id.* at 713. In *Culwick v. Wood*, 384 F. Supp. 3d 328, 345 (E.D.N.Y. 2019), the court noted that a former spouse's contention that ERISA preempted New York's divorce revocation statute was "a red herring" because the claim against her was based on her express waiver of her right to plan proceeds, not on the state statute. And in *Hennig v. Didyk*, 438 S.W.3d 177, 183 (Tex. App. 2014), the court determined that it need not resolve whether ERISA preempted a post-distribution suit under Texas's divorce revocation statute because the named beneficiary expressly waived her rights to plan proceeds. Thus, while the Estate cites these and other cases holding that ERISA does not preempt post-distribution suits to enforce express waivers by named

17

beneficiaries, it fails to show how those cases support its contention that ERISA should not preempt a post-distribution suit based on a divorce revocation statute.

¶ 31    Second, the Washington Court of Appeals examined a case almost identical to this one and held that ERISA "preempts a party's reliance on [Washington's divorce revocation statute] for recovery of ERISA funds in the hands of the designated beneficiary." *Estate of Lundy v. Lundy*, 352 P.3d 209, 215 (Wash. Ct. App. 2015). The *Lundy* court emphasized that, while *Kennedy* recognized an open question in the context of waiver by private agreement between the parties, it did "not recognize an open question in the context of a state-law-based claim to . . . ERISA benefits" after they had been distributed to the named beneficiary.  *Id.* at 214.

¶ 32    In reaching its conclusion, the *Lundy* court looked to a Ninth Circuit case, *Carmona v. Carmona*, 603 F.3d 1041 (9th Cir. 2010). In *Carmona*, a husband designated his then-wife as his survivor beneficiary under two ERISA-governed pension plans.  *Id.* at 1048. When the husband remarried, he petitioned the family court to revoke his designation of his ex-wife as survivor beneficiary and substitute his new wife.  *Id.* at 1049.  After the husband's death,

18

the court ordered the plan administrator to change the survivor beneficiary from his ex-wife to his new wife or, in the alternative, ordered that the funds his ex-wife received be placed in a constructive trust with his new wife as beneficiary. *Id.* The Ninth Circuit held that the plan administrator was not required to redirect the surviving spouse benefits to the new wife and that the constructive trust was impermissible because "state law doctrines (including constructive trusts) may not be invoked to assign benefits to parties other than those designated as beneficiaries under ERISA." *Id.* at 1061. "Any alternative rule," the court observed, "would allow for an end-run around ERISA's rules and Congress's policy objective of providing for certain beneficiaries, thereby greatly weakening, if not entirely abrogating, ERISA's broad preemption provision." *Id.*

¶ 33 Thus, as the *Lundy* court noted, *Carmona* "explicitly disapprove[d] of state law 'end-runs' around ERISA imposed by state courts." *Lundy*, 352 P.3d at 214. Accordingly, the court held that ERISA preempts claims under Washington's divorce revocation statute both before *and after* plan proceeds are distributed to the named beneficiary. Put another way, the plan participant's estate

could not "revive" the preempted statute "simply by applying it in a postdistribution argument." *Id.*

¶ 34    We, like the *Lundy* and *Carmona* courts, agree that subsection (8)(b) cannot be used as a statutory end-run around preemption and "cannot be used to contravene the dictates of ERISA." *Carmona*, 603 F.3d at 1061. Accordingly, we conclude that subsection (8)(b) cannot revive the preempted subsection (2) simply by effecting the same result *after* ERISA plan proceeds have been distributed to the named beneficiary.

¶ 35    Third, addressing a different federal law in *Hillman v. Maretta*, 569 U.S. 483 (2013), the United States Supreme Court concluded that the law preempted a provision of Virginia's divorce revocation statute very similar to Colorado's subsection (8)(b). Although the federal law at issue in *Hillman* was the Federal Employees' Group Life Insurance Act of 1954 (FEGLIA), 5 U.S.C. §§ 8701-8716, not ERISA, we nonetheless find the Court's reasoning persuasive on the issue of whether a state statute can sidestep preemption. *See Lundy*, 352 P.3d at 212 (stating that although *Hillman* is not controlling, it "make[s] clear that the account proceeds go to the

federally determined beneficiary regardless of state law to the contrary").

¶ 36 The Virginia statute at issue in *Hillman* provided, first, that a divorce or annulment revokes a "beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party." Va. Code Ann. § 20-111.1(A) (West 2011) (Section A). In a provision equivalent to Colorado's subsection (8)(b), the Virginia statute then provided that,

> [i]f this section is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under this section is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted.

Va. Code Ann. § 20-111.1(D) (Section D).

¶ 37 In *Hillman,* the husband named his then-wife as the beneficiary of his Federal Employees' Group Life Insurance (FEGLI) policy. 569 U.S. at 488. They subsequently divorced, and the husband remarried. At the time of the husband's death, however, his ex-wife remained the named beneficiary of his FEGLI policy. *Id.*

21

at 488-89. After the proceeds were distributed to the ex-wife, the new wife sued the ex-wife, arguing that the ex-wife "was liable to her under Section D for the proceeds of her deceased husband's FEGLI policy." *Id.* at 489. The ex-wife, however, argued that she should be allowed to keep the insurance proceeds because Section D — like Section A — was directly preempted by FEGLIA. *Id.*

¶ 38    The Supreme Court agreed. *Id.* at 490. In reaching its decision, the Court noted that FEGLIA provides that, upon an employee's death, life insurance benefits are paid in accordance with a specified "order of precedence." *Id.* at 486 (quoting 5 U.S.C. § 8705(a)). The proceeds accrue "[f]irst, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death." 5 U.S.C. § 8705(a). "[I]f there is no designated beneficiary," the benefits are paid "to the widow or widower of the employee." *Id.* Thus, FEGLIA creates a scheme that gives highest priority to an insured's designated beneficiary. *Hillman*, 569 U.S. at 493. The Court concluded that

> Section D interferes with Congress' scheme, because it directs that the proceeds actually "belong" to someone other than the named

22

> beneficiary by creating a cause of action for their recovery by a third party. It makes no difference whether state law requires the transfer of the proceeds, as Section A does, or creates a cause of action, like Section D, that enables another person to receive the proceeds upon filing an action in state court. In either case, state law displaces the beneficiary selected by the insured in accordance with FEGLIA and places someone else in her stead.

*Id.* at 494 (citations omitted).

¶ 39 In his concurrence, Justice Thomas observed that "[t]he direct conflict between Section D and FEGLIA is . . . evident in the fact that Section D's only function is to accomplish what Section A would have achieved, had Section A not been pre-empted." *Id.* at 501 (Thomas, J., concurring in the judgment). Though Section D does not directly preclude the payment of benefits to the designated beneficiary, Justice Thomas noted, "it accomplishes the same prohibited result by transforming the designated party into little more than a passthrough" for the individual state law has designated as the true beneficiary. *Id.* at 501-02.

¶ 40 The Estate argues that *Hillman*'s rationale does not apply to this case because ERISA, unlike FEGLIA, does not contain a statutory order of precedence. While the Supreme Court

23

determined that the federal interest in FEGLIA was "to ensure that a duly named beneficiary will receive the insurance proceeds and be able to make use of them," *Hillman*, 569 U.S. at 491, the Estate contends that the federal interest in ERISA is "to simply ensure that employers and plan administrators act in accordance with the plan's written terms," *Walsh v. Montes*, 388 P.3d 262, 265 (N.M. Ct. App. 2016); *see also Evans v. Diamond*, 957 F.3d 1098, 1104-05 (10th Cir. 2020). But the Estate construes ERISA's purpose too narrowly. Although ERISA does not contain a statutory order of precedence, "the protection of beneficiaries . . . [is] a paramount ERISA objective." *VanderKam v. VanderKam*, 776 F.3d 883, 886 (D.C. Cir. 2015). As the District of Columbia Circuit has explained,

> ERISA protects retirement benefits for millions of pension plan participants and their beneficiaries. 29 U.S.C. § 1001(b). Finding that the stability of retirement benefits directly affects the national economy, *id.* § 1001(a), Congress acted to ensure that accrued benefits remain unaltered by individuals and states alike. It accomplished this by prohibiting participants from assigning or alienating their own benefits, *id.* § 1056(d)(1), and, with limited exceptions, superseding state laws that "relate to any employee benefit plan," *id.* § 1144(a).

*Id.* at 885.

¶ 41 Notably, Congress created an exception from ERISA's preemption and anti-alienation provisions for a narrow category of state court orders known as qualified domestic relations orders. 29 U.S.C. § 1056(d)(3)(A). "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980). As the district court in this case noted in its well-reasoned order,

> Congress could have put in place a default rule providing that insurance proceeds accrue to a widow or widower and not a named beneficiary. Congress could have put in place a provision that a divorce decree operates to control over the designation of a beneficiary. Congress could have put in place a provision whereby a decedent's will is more reliable evidence of the decedent's intention than a beneficiary designation form executed years earlier. Congress could have provided that the benefits automatically revert to the estate of the participant upon the participant's divorce from the beneficiary. Congress did none of that. Instead, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be.

25

¶ 42    To sum up, the Estate presents no authority supporting a state-law-based claim — rather than one based on waiver by private agreement between the parties — to recover ERISA plan proceeds after their distribution to the named beneficiary.  Further, *Lundy* and *Carmona* explicitly disapprove of state law "end-runs" around ERISA preemption.  And finally, we are persuaded by the reasoning in *Hillman* that federal law preempts a state statute similar to subsection (8)(b).  Accordingly, we agree with the district court's conclusion that ERISA preempts the Estate's post-distribution claims to recover the insurance proceeds from Ms. Ragan.

## F.    Sanctions

¶ 43    Ms. Ragan contends that the Estate's appeal is frivolous and requests an assessment of fees and costs pursuant to C.A.R. 38(b).  That we ultimately disagree with the Estate's arguments does not mean the appeal was frivolous as filed or argued.  *See City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005) ("Meritorious actions that prove unsuccessful and good faith attempts to extend, modify, or reverse existing law are not frivolous.").  No prior Colorado case has addressed the enforceability of subsection (8)(b).  And because the Estate raised arguably meritorious contentions on

an issue of first impression in Colorado, we deny Ms. Ragan's request for fees and costs.

### III. Conclusion

¶ 44   We affirm the judgment and deny Ms. Ragan's request for fees and costs pursuant to C.A.R. 38(b).

JUDGE J. JONES and JUDGE NAVARRO concur.